STATE, Respondent v. OLSON, Appellant

(161 N.W.2d 858)

(File No. 10458.  Opinion filed October 21, 1968)

**Myrabo & Weisensee,** Canton, for defendant and appellant.

**Frank L. Farrar,** Atty. Gen., **Lloyd B. Peterson,** Asst. Atty. Gen., Pierre, **Roger A. Schiager,** State's Atty., **Sam D. Sechser,** Deputy State's Atty., Sioux Falls, for plaintiff and respondent.

ROBERTS, Judge.

Defendant was tried, convicted and sentenced on the charge of embezzlement and has appealed.

The material part of the information charged that defendant, Leslie L. Olson, contrary to the provisions of SDC 13.4006[1], "did wrongfully, fraudulently and feloniously convert one 1956 New Moon house trailer * * * of the value of Nineteen Hundred and 00/100 * * * to his own use or the proceeds thereof, he being the bailee of Albert A. Schmidt or Helen G. Schmidt of Flandreau, South Dakota, and entrusted with the said New Moon house trailer."

---

1. This section provides: "If any person being intrusted with any property as bailee or with any power of attorney for the sale or transfer thereof fraudulently converts the same or the proceeds thereof to his own use or secretes it or them with a fraudulent intent to convert to his own use, he is guilty of embezzlement whether he has broken the package or otherwise determined the bailment or not."

Defendant contends (1) that the trial court erred in denial of his motion for directed verdict claiming that there was not sufficient evidence to justify the jury returning a verdict of guilty and (2) that the court committed error in refusing to grant a motion for a mistrial predicated upon the alleged misconduct of the deputy state's attorney.

The statutory crime of embezzlement is broadly defined as the fraudulent appropriation of property by a person to whom it has been entrusted. SDC 13.4001; State v. Schultz, 52 S.D. 209, 217 N.W. 213. Section 13.4007, defining the offense of embezzlement by bailee, requires that there be a bailment of the property, that there be a conversion of the property or the proceeds thereof by the bailee to his own use while so held, and that there be a fraudulent intent to deprive the owner of the property.

It is without dispute that Albert A. Schmidt and his wife who resided at Flandreau, South Dakota, turned the house trailer over to defendant to sell for them, and that disposition of the proceeds from the sale of the property was without their knowledge and consent. Defendant acquired possession of the house trailer for a particular purpose and acquired no other interest in the property. The transaction constituted a bailment.

Defendant at the conclusion of the state's evidence moved for a directed verdict on the ground that there was insufficient evidence to sustain a verdict; that there was no evidence upon which the jury could conclude that defendant either appropriated the house trailer or the proceeds from its sale; that defendant acted in the capacity of an employee of the Holiday Mobile Sales Co., the bailee in the transaction; and that there was a fatal variance between the allegations of the information charging the defendant individually with commission of the crime and the proof.

It is specifically provided by statute that the trial court may direct a verdict of acquittal upon defendant's motion and that denial thereof may be reviewed upon appeal to this court. SDC 34.3650. Defendant did not rest upon his motion, but presented evidence after denial thereof and rebuttal

evidence was introduced by the state. The denial of a motion for directed verdict for failure of proof is not reversible error if proof is afterwards supplied by either party. The introduction of evidence by defendant is not deemed a waiver of the motion. This court, however, considers all the evidence in determining whether denial of the motion was reversible error.

The evidence shows that Holiday Mobile Sales Co. was a dealer in used house trailers with a place of business at 6601 West 12th Street, Sioux Falls. Defendant was president and his wife Mae was secretary. Ingalls Mobile Sales was incorporated in January, 1966. It acquired later that year a sales lot at 3200 North Cliff Ave. Defendant was vice president of that corporation. On direct examination, defendant testified: "Q. * * * Did Mrs. Schmidt come in sometime in the late winter of 1966? A. Yes. * * * Q. * * * What was the conversation? What did you say, and what did she say? A. She asked when the trailer would be sold, and she was very anxious to get it sold, and she asked if she could have a receipt for her trailer at that time, and I told her that she could, and I gave her a receipt for the trailer. * * * Q. And did you explain to her at that time that Ingalls Mobile Sales, Inc. was the business that you were working for? A. That's correct. * * * Q. Now, turning to the Schmidt trailer: You testified that it came in, and was around the lot there for some continued time, did you? A. Yes. * * * Q. And it was sold to Mrs. Levinger, as her testimony here indicates? A. Yes. Q. There was some other merchandise involved in the sale? A. Yes, there was. * * * Q. Now, referring to the 6th of July 1966, did Mrs. Levinger settle up and complete the payments for the merchandise and the trailer? A. First, she bought the trailer. Q. But did she settle up on the 6th? A. Yes, she did. * * * Q. I'll show you what has been marked as Exhibit 10, and I'll ask you if that's the check with which Mrs. Levinger settled her account? A. Yes, that is correct. * * * Q. Referring to Exhibit 10, what did you do with Exhibit 10? A. I went down to the First National Bank, and had this made into two cashier's checks. Q. Are those cashier's checks the ones that are in evidence here, Exhibits 11 and 12? A. Yes, that's correct."

The check given by the purchaser of the house trailer on July 6, 1966, in the amount of $3,232.69 was drawn on the First National Bank of Sioux Falls and was made payable to Ingalls Mobile Sales. This check was presented by defendant to the bank on which it was drawn in exchange for the two cashier's checks above referred to. Exhibit No. 11 was made payable to Ingalls Mobile Sales in the amount of $1,703.77 and Exhibit No. 12 to Sioux Valley Bank in the amount of $1,528.92. The cashier's check payable to the Ingalls Mobile Sales was endorsed and presented by Mrs. Mae Olson to the Northwestern National Bank, Stockyards Branch, in Sioux Falls and there is evidence that she received the amount of the check in cash.

The cashier's check payable to the Sioux Valley Bank was presented to the bank and the amount thereof was credited to the Holiday Sales Co. account. On July 7, 1966, a check in the amount of $1,500, payable to the order of Helen and Albert Schmidt, was drawn on this account and signed by Leslie L. Olson and Mae A. Olson. The check was dishonored and returned promptly to the holders for want of funds. The bank records indicate that on the same date, July 7, 1966, the credits including the deposit of $1,528.92 and withdrawals left a balance of $3.17 in the account. On July 27, 1966, defendant drew another Holiday Mobile Sales Co. check in the amount of $1,500 on the Sioux Valley Bank, payable to Helen G. Schmidt, and the check was presented and dishonored.

In 19 Am.Jur.2d, Corporations, § 1390, dealing with the criminal liability of corporate officers and agents, it is stated: "An officer or agent, however, cannot shield himself from criminal responsibility for his own act on the ground that it was done in his official capacity as an officer of a corporation; nor can he assert that acts in corporate form are not his acts merely because they are carried out by him through the instrumentality for a corporation which he controls and dominates and which he employs for that purpose."

In Larson v. Western Underwriters, Inc., 77 S.D. 157, 87 N.W.2d 883, this court held that "Where a corporation is the mere alter ego or business conduit of a person", a court is jus-

tified in disregarding the corporate entity. See also Milbrath v. State, 138 Wis. 354, 120 N.W. 252, 131 Am.St.Rep. 1012; Bailey v. State, 84 Ga.App. 839, 67 S.E.2d 830; Hitchcock v. State, 47 OhioApp. 90, 190 N.E. 773; Jurgensen v. State, 135 Neb. 537, 283 N.W. 228.

■ The issues of fact were submitted to the jury under instructions to which the defendant interposed no objection. The facts were for the jury and this court will not disturb the verdict unless the evidence as a matter of law is insufficient to justify the jury finding defendant guilty. The Holiday Sales Company was controlled and dominated by the defendant and the claim that the corporation was bailee of the house trailer and the proceeds of the sale and that he was not, therefore, criminally liable for property which had been entrusted to the corporation is untenable. The true nature of the transaction is fully revealed by the facts.

■ ■ The conversion by a bailee of property entrusted to him and fraudulent intent may be proved by direct evidence or by proof of facts from which fraudulent conversion may be inferred. State v. Teutsch, 80 S.D. 462, 126 N.W.2d 112. We find there was sufficient evidence to establish the elements of the crime with which defendant was charged.

Defendant contends that the court erred in refusing to declare a mistrial and subsequently in denying motion for new trial predicated upon the alleged misconduct of the deputy state's attorney. The cross-examination of the complaining witness, Mrs. Helen Schmidt, brought about the claim of misconduct. The following appears in the transcript of her testimony:

"Q. You didn't even so much as inquire of Mr. Olson as to what was going to happen to your account?

"A. Well, no, I don't suppose I did. I thought the man was honest.

MR. ANDERSON: Does that strike you as particularly funny, Mr. Sechser?

\*      \*      \*      \*      \*      \*

THE COURT: We'll have a ten-minute recess at this time, ladies and gentlemen."

In the chambers of the court, the attorney for defendant made the following motion: "Just before the recess, the witness made an unsolicited and gratuitous remark impugning the defendant's honesty, whereupon the deputy state's attorney went to great length to embarrass the defendant in this case by bringing about a forced laugh, all of which was intended to, and did, over-emphasize the significance of the gratuitous answer. We point out to the court that this makes it difficult for the defendant to have a fair trial, and we ask that this court grant, at this time, a mistrial." The motion was denied and counsel did not request the court to admonish the jury to disregard the alleged misconduct. Defendant made a motion for new trial on the ground of the alleged misconduct.

██ We are not persuaded that the court erred when it ruled that the misconduct, if it was such, was not prejudicial. The granting of a new trial for alleged misconduct of counsel is peculiarly within the discretion of the trial judge. He has before him the happenings and incidents of a trial as they occur and is in a position of advantage in determining whether prejudice results. We find no abuse of discretion in the denial of a new trial.

Judgment affirmed.

All the Judges concur.